UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-22449-WILLIAMS
MAGISTRATE JUDGE REID

ALEXANDER ORTIZ,

        Movant,

v.

WILLIAM BARR, et al.,

        Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

Petitioner, **Alexander Ortiz**, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. [ECF No. 1]. Petitioner is seeking federal habeas relief from his continued detention by the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE"). The case has been referred to the Undersigned for the issuance of all preliminary orders and any recommendations to the District Court regarding dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Fla. Admin. Order 2019-2. [ECF No. 2].

For its consideration of the Petition, the Court has the Respondent's Response to the Court's Order to Show Cause. As discussed below, the Petition [ECF No. 1] should be **DENIED**.

## I.      Factual Background

Petitioner is a native and citizen of Cuba. [ECF No. 8-1, Ex. A]. On or about September 3, 2019, a border patrol agent encountered him in the Rio Grande Valley of Texas and detained him for unlawful entry into the United States. [*Id*. at 4]. Petitioner was processed for expedited removal with credible fear under 8 U.S.C. § 1225(b)(1). [ECF No. 8-2, Ex. B]. On September 4, 2019, the Department of Homeland Security ("DHS") issued a Notice and Order of Expedited Removal.

[*Id*.]. After a negative finding of credible fear by United States Citizenship and Immigration Services ("USCIS"), Petitioner's case was referred to an Immigrate Judge to review the credible fear determination. [ECF No. 8-3, Ex. C]. On November 13, 2019, the Immigration Judge affirmed USCIS, and returned the case to DHS for removal. [ECF No. 8-4, Ex. D].

On or about February 27, 2020, Petitioner was transferred to the Krome Service Processing Center ("Krome") for removal to Cuba on February 28, 2020. [ECF No. 8-5, Ex. E]. Petitioner, however, was taken off the flight because he was missing medication. [*Id*. at 3]. The Government of Cuba has accepted Petitioner for removal, and he was scheduled to be removed in August, once removal flights to Cuba were expected to resume. [*Id*.]. However, a review of the ICE online inmate locator indicates that Petitioner was not removed in August, is still in ICE custody, and is currently being held at Jackson Parrish Correctional Center in Jonesboro, Louisiana.

## II.      Discussion

A.  Positions of the Parties

Here, Petitioner challenges the lawfulness of his detention. Specifically, he asserts that he was ordered deported on or about November 12, 2019 and has remained in ICE custody since that date. [ECF No. 1 at 2]. He claims that he has cooperated fully with all of ICE's efforts to remove him. [*Id*. at 3]. Despite this fact, he remains in custody under 8 U.S.C. § 1231. [*Id*. at 4]. As such, Petitioner claims he has been detained beyond the presumptively reasonable six-month period set by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 698-701 (2001). [*Id*.].

In response, the Respondent asserts that because Petitioner is detained under the expedited removal statute, 8 U.S.C. § 1225(b)(1), and not § 1231: (1) the Court is without jurisdiction to review Petitioner's detention; and (2) even if the Court had jurisdiction to review Petitioner's

detention status, he has failed to demonstrate no significant likelihood of removal in the foreseeable future. [ECF No. 8 at 3, 10].

    B. <u>Petitioner's prolonged detention is subject to judicial review</u>

Federal courts have jurisdiction to determine whether a petitioner is being held "in custody in violation of the Constitution or laws . . . of the United States." *See* 28 U.S.C. § 2241(c)(3). Nevertheless, there are limitations on a court's ability to review an immigration detainee's removal order. In pertinent part, the REAL ID Act, stripped district courts of jurisdiction over § 2241 petitions attacking removal orders. *See* 8 U.S.C. § 1252(B)(ii).

As applied here, section 1225(b) addresses the inspection of aliens seeking admission to the United States. If an immigration officer determines that an arriving alien is inadmissible on the basis of lack of documentation, under 8 U.S.C. § 1182(c)(7), the officer may order the alien removed. However, if the alien claims asylum, the officer must refer the alien for an interview with an asylum officer. *See* 8 U.S.C. § 1225(b)(1)(A).

If the asylum officer finds no credible fear of persecution, then the alien shall be removed "without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I). Pending removal from the United States, an alien under this process is subject to mandatory detention. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

However, judicial review of any determination made under 8 U.S.C. § 1225(b)(1) is limited. Specifically, under 8 U.S.C. § 1252, except as provided in subsection (e), no court has jurisdiction to review "any individual determination or to entertain any cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(i). Under subsection (e), in habeas corpus proceedings, a court may review only:

(A)  whether the petitioner is an alien;

(B)  whether the petitioner was ordered removed under such section; and,

(C)  whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

8 U.S.C. § 1252(e)(2).

Accordingly, when liberally construing the Petition, to the extent that Petitioner means to challenge his order of removal or "any claim arising from or relating to the implementation of operation of [his] order of removal," the Court is without jurisdiction to review it because of the limitations set by Congress under 8 U.S.C. § 1252.

However, this does not end the inquiry. In *Jennings v. Rodriguez*, 583 U.S. ___, 138 S. Ct. 830 (2018), the Supreme Court of the United States recognized the limitations of judicial review under § 1252, but determined that the language "arising from" could not be construed in a such an "extreme way" so as to limit an immigration detainee's challenge to his prolonged detention.[1] *Id.* at 840. Ultimately, the Supreme Court noted *in dicta* that there was no jurisdictional bar to reviewing a group of immigration detainees' prolonged detention under § 1225 because they "[were] not asking for review of an order of removal; they [were] not challenging the decision to detain them in the first place or to seek removal; and they [were] not even challenging any part of the process by which their removability will be determined." *Id.* at 841.

Here, Petitioner does not appear to be challenging his order of removal, nor does he argue that the initial decision to detain him was unlawful. In fact, Petitioner states that he "has cooperated

---

[1] The Court recognizes that *Jennings* addressed the application of the "arising from" language in 8 U.S.C. § 1252(b)(9), and not § 1252(a)(2)(A)(i). Nevertheless, the Court views the Supreme Court's analysis of the "arising from" language to be instructive in this case.

fully with all efforts by ICE to remove [him] from the United States" and "voluntary [sic] provide[d] [his] identity documents." [ECF No. 1 at 3]. Thus, his challenge to his prolonged post-removal detention falls within the core of § 2241 habeas review, and the Court appears to retain jurisdiction to consider it. *See* 28 U.S.C. § 2241(c)(3); *see also Nasrallah v. Barr*, 590 U.S. ___, 140 S. Ct. 1683, 1687-88 (2020) (stating generally that "noncitizens may obtain judicial review of constitutional and legal challenges to [a] final order of removal, but not of factual challenges to the final order of removal").

C. *Zadvydas* applies to Petitioner's Case

As discussed above, the Respondent asserts that the six-month presumptively reasonable period of *Zadvydas* does not apply to Petitioner's case because he is detained under § 1225(b), not § 1231, which governs the detention and removal of aliens "ordered removed." [ECF No. 8 at 6].

Section 1231(a) is the post-removal detention provision of the Immigration and Nationality Act ("INA") and applies to aliens who are subject to a final order of removal. When an alien is ordered removed, the Attorney General must remove the alien from this country within a period of ninety days. *See* 8 U.S.C. § 1231(a)(1)(A). During this ninety-day period, certain criminal aliens remain detained. *See* 8 U.S.C. § 1231(a)(2).

The initial removal period begins on the latest of the following:

(i)    The date the order of removal becomes administratively final;

(ii)    If the removal order is judicially reviewed and if a court orders a stay of removal of the alien, the date of the court's final order.

(iii)    If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). If the alien is not removed during the 90-day period, further detention is authorized by statute. *See* 8 U.S.C. § 1231(a)(6). However, continued detention beyond the 90-day statutory removal period is not indefinite.

In *Zadvydas*, the Supreme Court found that 8 U.S.C. § 1231(a)(6) does not authorize immigration officials to hold removable aliens in custody indefinitely. While an alien can be detained during the 90-day removal period contemplated by the statute, the alien can be held for only a reasonable period thereafter. *Zadvydas*, 533 U.S. at 698-701. The total reasonable period of detention is presumed to be six months (the 90-day statutory period under § 1231(a)(1)(A) plus an additional 90-days under § 1231(a)(6)), unless immigration officials can show that there is a "significant likelihood of removal in the reasonably foreseeable future." *Id*.

Thus, to be granted relief from a post-removal order of detention, pursuant to *Zadvydas,* a petitioner must first show that he has been detained beyond the six-month period declared by the Supreme Court to be presumptively reasonable. *See Akinwale,* 287 F.3d 1050, 1051-52 (11th Cir. 2002). Second, Petitioner must also provide evidence to believe that there is no significant likelihood of removal in the foreseeable future. *See Zadvydas,* 533 U.S. at 698-701; *see also Akinwale,* 287 F.3d at 1052.

The issue here is whether *Zadvydas* applies to Petitioner's case at all. If Petitioner is presently detained pursuant to § 1225(b), as asserted by the Respondent, his detention would fall outside the scope of *Zadvydas* because the presumptively reasonable six-month temporal limitation on the government's authority to detain an alien post-removal applies only to those detained under 8 U.S.C. § 1231(a)(6).

On this issue, *Jennings* is instructive. Specifically, in *Jennings*, the Supreme Court recognized that § 1225(b)(1) mandates detention of applicants for admission until removal

6

proceedings have concluded, but that "once those proceedings end, detention under § 1225(b) must end as well." 583 U.S. at ___, 138 S. Ct. at 842. Notably, in *Jennings*, the Supreme Court found that *Zadvydas* did not apply to those detained under § 1225(b) because, unlike § 1231(a)(6), which left the permissible length of detention unclear, § 1225(b) specifically mandated detention "*until removal proceedings have concluded*." *Id*. at 844 (emphasis added).

Here, contrary to the Respondent's argument, Petitioner's removal proceedings have concluded. After Petitioner was apprehended near the border, he was detained and processed for expedited removal with credible fear under 8 U.S.C. § 1225(b)(1). [ECF No. 8-1, Ex. A]. On September 4, 2019, DHS issued a Notice and Order of Expedited Removal, determining Petitioner to be inadmissible to the United States under section 212(a)(7)(A)(i)(I) of the INA, which is codified in the United States Code as 8 U.S.C. § 1182(a)(7)(A)(i)(I). [ECF No. 8-2, Ex. B]. That statute specifically deems inadmissible any alien who is "not in possession of a valid nonimmigrant visa or border crossing identification card at the time of application for admission." 8 U.S.C. § 1182(a)(7)(A)(i)(I).

Upon review, an asylum officer determined that Petitioner did not have a credible fear of persecution or torture. [ECF No. 8-3, Ex. C]. The case was then referred to an Immigration Judge, who affirmed the asylum officer's finding on November 12, 2019, and returned the case to DHS for removal. [ECF No. 8-4, Ex. D]. On that same date, Petitioner received his final order of removal. [ECF No. 8-2, Ex. B].

Accordingly, prior to the entry of Petitioner's final order of removal, his removal proceedings under § 1225(b) remained ongoing, and he remained subject to mandatory detention. Upon the conclusion of the removal proceedings, however, Petitioner's detention under § 1225(b) ended as well. *See Jennings*, 583 U.S. at ___, 138 S. Ct. at 842. From that point forward,

Petitioner's post-removal detention is controlled by 8 U.S.C. § 1231, which governs the detention and removal of aliens who, like Petitioner, have already been ordered removed. Under this framework, *Zadvydas* applies to Petitioner's case because (1) he has a final order of removal, which was entered on November 12, 2019; and (2) he has been in post-removal detention beyond the six-month presumptively reasonable period set by the Supreme Court.

    D. Petitioner has not shown there is no reasonable likelihood of his removal in the foreseeable future

As discussed above, Petitioner has shown that he has been detained beyond the six-month period declared by the Supreme Court to be presumptively reasonable. *See Akinwale,* 287 F.3d at 1051-52. However, he must also provide evidence to believe that there is no significant likelihood of removal in the foreseeable future in order to be granted relief from a post-removal order of detention. *See Zadvydas,* 533 U.S. at 698-701; *see also Akinwale,* 287 F.3d at 1052.

Here, Petitioner makes no such showing. Other than his formulaic recitation that there is "no significant likelihood of his removal in the reasonably foreseeable future" [ECF No. 1 at 4], he fails to plead any facts to support such a claim.[2] Rather, as argued by the Respondent [ECF No. 8 at 11], Petitioner has been accepted for removal by the Cuban Government, and the Enforcement and Removal Operations ("ERO") Office expected Petitioner to be removed as soon as removal flights to Cuba were scheduled to resume in August. [ECF No. 8-5, Ex. E at 2-3].

---

[2] Attached to his Petition is a letter written by Petitioner to his immigration officer. [ECF No. 1 at 8]. In that letter, he claims that his "home country will not accept his deportation or provide travel documents." [*Id.*]. To the extent that the letter can be considered part of the Petition itself, it is not sworn under the penalty of perjury, and does not comply with the Local Rules. *See* S.D. Fla. L.R. 88.2(a). However, even if the Court considered the letter as part of the Petition, Petitioner still fails to plead sufficient facts to demonstrate that there is no significant likelihood of his removal in the reasonably foreseeable future because "a [mere] delay in issuance of travel documents does not, without more, establish that a petitioner's removal will not occur in the reasonably foreseeable future[.]" *Linton v. Holder*, No. 10-20145-CIV, 2010 WL 4810842, at *4 (S.D. Fla. Oct. 4, 2010), report and recommendation adopted, No. 10-20145-CIV, 2010 WL 4810651 (S.D. Fla. Nov. 19, 2010).

While that ultimately did not happen, Petitioner has not filed anything else in the record to indicate that there is no significant likelihood of removal in the foreseeable future. Thus, he fails to meet his burden under the second prong of *Zadvydas*.

Further, the mere existence of a delay of Petitioner's deportation is not enough for Petitioner to meet his burden. *See, e.g.*, *Newell v. Holder*, 983 F. Supp. 2d 241, 248 (W.D.N.Y. 2013) (explaining the mere passage of time cannot satisfy a petitioner's burden that there is no significant likelihood of removal); *Gonzalez v. Bureau of Immigration & Customs Enf't*, No. CIV.A. 1:03-CV-178-C, 2004 WL 839654, at *2 (N.D. Tex. Apr. 20, 2004) (concluding a misplaced travel document does not satisfy a petitioner's burden that there is no significant likelihood of removal, particularly when two subsequent travel documents were obtained).

Lastly, unlike Mr. Zadvydas's case, Petitioner's detention is not "potentially permanent" or "indefinite." *See Zadvydas*, 533 U.S. at 690-91, 697.  It is reasonably foreseeable that a termination point (i.e., removal) will occur once travel restrictions imposed by the current pandemic are lifted. [ECF No. 8 at 11]. Accordingly, Petitioner cannot meet his burden in showing no significant likelihood that removal will occur in the reasonably foreseeable future. *See Akinwale*, 287 F.3d at 1051-52. Therefore, he has failed to satisfy his burden for habeas relief under § 2241, and this action should be denied.

This denial, however, should be without prejudice to Petitioner potentially re-filing another § 2241 action should his detention be further prolonged, and upon a sufficient showing that there is no significant likelihood of his removal in the reasonably foreseeable future.

### III.    Recommendations

Based on the above, it is **RECOMMENDED** that the Petition for Writ of Habeas Corpus [ECF No. 1] be **DENIED WITHOUT PREJUDICE** and this case be **CLOSED** by the Clerk of Court.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

SIGNED this 1st day of February, 2021.

UNITED STATES MAGISTRATE JUDGE

cc:    Alexander Ortiz
       A#213543058
       Krome Service Processing Center
       Inmate Mail/Parcels
       18201 SW 12th Street
       Miami, FL 33194
       PRO SE

       Alexander Ortiz
       A#213543058
       JACKSON PARISH CORRECTIONAL CENTER
       327 INDUSTRIAL DRIVE
       JONESBORO, LA 71251
       PRO SE

       David Werner
       US Attorney's Office, Civil Division
       99 NE 4th Street, Suite 300
       Miami, FL 33132
       Email: David.Werner@usdoj.gov